Filing # 77668492 E-Filed 09/10/2018 04:35:35 PM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2018-030390-CA-10

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware series limited liability company,
MSPA CLAIMS 1, LLC, a Florida limited
liability company, and SERIES PMPI, a
designated    series    of    MAO-MSO
RECOVERY II LLC, a Delaware series
limited liability company,

       Plaintiffs,

v.

ALERE, INC. a Delaware profit corporation,
ALERE SAN DIEGO, INC. a Delaware
profit corporation, and ALERE HOME
MONITORING, INC. a Delaware profit
corporation,

       Defendants.

_____/

## AMENDED COMPLAINT FOR PURE BILL OF DISCOVERY

Plaintiffs, MSP Recovery Claims, Series LLC ("MSPRC"), MSPA Claims 1, LLC

("MSPA"), and Series PMPI, a designated series of MAO-MSO Recovery II LLC ("MAO-MSO")

file this Amended Complaint for a Pure Bill of Discovery to obtain information from Defendants,

Alere, Inc., Alere San Diego, Inc., and Alere Home Monitoring, Inc. (collectively, "Alere" or

"Defendants"), regarding their home blood coagulation tests ("Home Testing System"), and state

as follows:

1

## JURISDICTION, PARTIES & VENUE

1. The basis for this Court's jurisdiction lies in equity pursuant to section, 26.012(2)(c)[1], Florida Statutes.

2. Plaintiffs are companies that have obtained assignments from Medicare Payers (the assigning Medicare Payers are referred to collevtively as the "Assignors") to recover reimbursement or payment from Defendants. Plaintiffs' Assignors provide health insurance coverage pursuant to Medicare Part C, to individuals subscribed to their plans ("Enrollees"). The Assignors made payments on behalf of its Enrollees for medical expenses. Specifically, the Assignors made payments on behalf of, or otherwise became financially responsible for, their Enrollees' medical expenses which may have been incurred as a result of Defendants' defective Home Testing System product.

3. Plaintiff, MSPRC, is a Delaware series limited liability company with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSPRC's limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of MSPRC.

4. MSPRC has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other Company assets, and in order to account for and associate certain assets with certain particular series. All designated series form a part of MSPRC and pursuant to MSPRC's limited liability agreement and applicable amendment(s), each designated series will be owned and controlled by MSPRC. MSPRC may receive assignments in the name of MSPRC and further associate such assignments with a

---

[1] Circuit courts have exclusive jurisdiction pursuant to section 26.012(2)(c), Florida Statutes "in all cases in equity."

particular series, or may have claims assigned directly to a particular series. In either event, MSPRC will maintain the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by MSPRC in its own name or it may elect to bring suit in the name of its designated series.

5.  MSPRC's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to MSPRC.

6.  Plaintiff MSPA, is a limited liability company that is duly organized, validly existing, and in good standing under the laws of Florida, with its principal place of business in Miami-Dade County, Florida.

7.  Plaintiff MAO-MSO, is a Delaware entity, with its principal place of business located at 45 Legion Drive, Cresskill, New Jersey 07626. MAO-MSO is a citizen of the State of Delaware.

8.  The Assignors have transferred all rights, title, and interest, which allow them to bring these Pure Bill of Discovery.

<u>**Assignment Allegations**</u>

9.      On May 3, 2016, **Preferred Medical Plan, Inc.**, a Florida corporation entered into an assignment agreement with MSP Recovery, LLC, a Florida limited liability company, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential. On August 8, 2016, MSP Recovery, LLC entered into an assignment agreement with Series PMPI, a designated series of MAO-MSO Recovery II, LLC, a Delaware

series limited liability company, whereby it irrevocably assigned its right to recover conditional

payments pursuant to state and federal as previously assigned from Preferred Medical Plan, Inc.

Specifically, Section 1.1 of the agreement states that:

> [a]ssignor hereby **irrevocably assigns**, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, all of Assignor's right, title, ownership and interest in and to all Assigned Claims, plus all proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Claims, and all rights and claims against primary payers and/or third parties that may be liable to Assignor arising from or relating to the Assigned Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims".

(emphasis added).

This second assignment agreement was executed by individuals of majority, of sound

mind, and with legal authority to bind the respective parties under New York law. Consideration

was given between each party in executing these assignment agreements.

10. On April 15, 2014, **Florida Health Care Plus, Inc.**, a Florida corporation entered

into an assignment agreement with La Ley Recovery Systems, Inc., a Florida corporation,

whereby it irrevocably assigned its right to recover conditional payments pursuant to state and

federal law. The assignment agreement was executed by individuals of majority, of sound mind,

and with legal authority to bind the respective parties and was entered into under Florida law.

Specifically, Section 1.1 of the agreement states that:

> [b]y way of this agreement, [FHCP] appoints, directs, and otherwise *assigns* all of [FHCP's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any its members and/or plan participants.

On February 20, 2015, La Ley Recovery Systems, Inc. entered into an assignment

agreement with MSPA Claims 1, LLC, a Florida limited liability company, whereby it irrevocably

4

assigned its right to recover conditional payments pursuant to state and federal law as assigned from Florida Health Care Plus, Inc. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties under Florida law. That assignment agreement states as follows:

> [La Ley Recovery] hereby irrevocably assigns, transfers, conveys, sets over, and delivers to [MSPA Claims 1, LLC] or its assigns any and all of [La Ley Recovery]'s rights, title, ownership and interest in and to all rights and entitlements, that [La Ley Recovery] has, may have had, or has asserted against third parties arising from or relating to the Claims.

Consideration was given between each party in executing these assignments agreements.

On June 1, 2016, a Settlement Agreement was entered into by La Ley Recovery Systems, Inc., MSP Recovery, LLC, MSPA Claims 1, LLC, and the Florida Department of Financial Services as the Receiver of Florida Healthcare Plus, Inc. on behalf of Florida Healthcare Plus, Inc. The Settlement Agreement confirmed the ownership of all of Florida Healthcare Plus, Inc.'s claims relating to conditional payments pursuant to state and federal law to MSPA Claims 1, LLC, ultimately. This Settlement Agreement was approved by the Leon County Court of Florida on June 14, 2016.

11.     On September 21, 2015, **7th Avenue Medical Plaza, Inc.** entered into an assignment agreement with MSP Recovery 15-473, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential.

## 1.1   Irrevocable and Absolute Assignment of Claims.

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery 15-473, LLC entered into an assignment agreement with

Series 15-09-32, a designated series of MSP Recovery Claims, Series LLC, a Delaware series

limited liability company, whereby it irrevocably assigned its right to recover conditional

payments pursuant to state and federal law as assigned from 7th Avenue Medical Plaza, Inc. This

second assignment agreement was executed by individuals of majority, of sound mind, and with

legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", "Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Health Care Claim(s) Cost Recovery Agreement** dated **September 21, 2015**, by and among **7th Avenue Medical Plaza**, also known as **7th Avenue Medical Plaza, Inc.**, a Florida corporation (the **"Client"**), and **MSP Recovery 15-473, LLC**, a Delaware limited liability company (the **"Agreement"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement. including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

12.    On February 18, 2016, **Broward Primary Partners, LLC** entered into an

assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to

recover conditional payments pursuant to state and federal law. The assignment agreement was

executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential.

### 1.1    Irrevocable and Absolute Assignment of Claims.

Client hereby assigns, transfers, conveys, sets over and delivers to MSP Claims, or its assigns, to the extent it is legally permitted any and all of Client's right, title, ownership and interest in and to all rights and entitlements, that Client has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 16-02-437, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Broward Primary Partners, LLC. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Claim(s) Cost Recovery Agreement and Assignment of Claims and Causes of Action** dated **February 18, 2016**, by and among **Broward Primary Partners, LLC**, a Florida limited liability company (**the "Client"**), and **MSP Recovery, LLC**, a Florida limited liability company (**the "Agreement"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

13.     On January 19, 2017, **C E Ceballos MD LLC**, doing business as **Ortho Miami**,

entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned

its right to recover conditional payments pursuant to state and federal law. The assignment

agreement was executed by individuals of majority, of sound mind, and with legal authority to

bind the respective parties and was entered into under Florida law. Pursuant to the terms of the

assignment agreement, the parties agreed to maintain the terms of the assignment agreement

confidential.

4.1 Assignment of Claims
Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP
Recovery, and any of its successors and assigns, any and all of Client's right, title,
ownership and interest in and to all Claims existing on the date hereof, whether
based in contract, tort, statutory right, and any and all rights (including, but not
limited to, subrogation) to pursue and/or recover monies for Client that Client had,
may have had, or has asserted against any party in connection with the Claims and
all rights and claims against primary payers and/or third parties that may be liable
to Client arising from or relating to the Claims, including claims under consumer
protection statutes and laws, and all information relating thereto, all of which shall
constitute the "Assigned Claims". The transfer, grant, right, or assignment of any
and all of Client's right, title, ownership, interest and entitlements in and to the
Assigned Claims shall remain the confidential and exclusive property of MSP
Recovery or its assigns. This assignment is irrevocable and absolute.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series

17-03-584, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably

assigned its right to recover conditional payments pursuant to state and federal law as assigned

from CE Ceballos MD LLC, dba Ortho Miami. This second assignment agreement was executed

by individuals of majority, of sound mind, and with legal authority to bind the respective parties

and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated **January 19, 2017**, by and among **C E Ceballos MD, LLC**, a Florida limited liability company (the "Client"), and **MSP Recovery, LLC**, a Florida limited liability company (the "Agreement"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

14. On November 23, 2015, **Century HealthCare, Inc.** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential.

Client hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 15-08-24, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Century HealthCare, Inc. This second assignment agreement was executed by individuals of

majority, of sound mind, and with legal authority to bind the respective parties and was entered

into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Actos Recovery Agreement** dated **August 27, 2015**, and the Recovery **Agreement** dated **November 23, 2015**, each by and among **Century Health Care, Inc.**, a Florida corporation (the **"Client"**), and **MSP Recovery, LLC**, a Florida limited liability company (together, the **"Agreements"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

15. On November 23, 2015, **Doctor's Group Management, Inc.** entered into an

assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to

recover conditional payments pursuant to state and federal law. The assignment agreement was

executed by individuals of majority, of sound mind, and with legal authority to bind the respective

parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement,

the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party ("Assigned Claims").    This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series

15-08-26, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably

assigned its right to recover conditional payments pursuant to state and federal law as assigned from Doctor's Group Management, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Actos Recovery Agreement** dated **August 27, 2015** and the **Recovery Agreement** dated **November 23, 2015**, each by and among **Doctors Group Management, Inc.**, a Florida corporation **(the "Client")**, and **MSP Recovery, LLC**, a Florida limited liability company **(together, the "Agreements")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

16.     On October 9, 2015, **Farid Marquez, MD, P.A.** entered into an assignment agreement with MSP Recovery 529, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies

11

for Client that Client has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery 529, LLC entered into an assignment agreement with Series 15-09-284, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Farid Marquez, MD, PA. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Health Care Claim(s) Cost Recovery Agreement** dated **October 9, 2015**, by and among **Farid Marquez MD, P.A.**, a Florida professional association **(the "Client")**, and **MSP Recovery 529, LLC**, a Delaware limited liability company **(the "Agreement")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

17. On October 8, 2015, **Health Care Alliance Group, Inc.** entered into an assignment agreement with MSP Recovery 15-475, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery 15-475, LLC entered into an assignment agreement with Series 15-09-273, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Healthcare Alliance Group, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Health Care Claim(s) Cost Recovery Agreement** dated **October 8, 2015**, by and among **Healthcare Alliance, Inc.**, a Florida corporation, also known as, **Healthcare Alliance Group, Inc. (the "Client")**, and **MSP Recovery 15-475, LLC**, a Delaware limited liability company **(the "Agreement")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

18.     On September 14, 2015, **Hygea Health Holdings, Inc.** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties

and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the

parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims. By this Agreement, the parties acknowledge and agree to the following: (i) the transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements, and/or any other information Client makes available, assigns, transfers, conveys or delivers to MSP Recovery is proprietary, confidential and the sole property of MSP Recovery or its assigns, and (ii) it shall remain the sole and exclusive property of MSP Recovery, and (iii) shall survive the termination or expiration of this Agreement, notwithstanding anything herein to the contrary.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series

15-08-19, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably

assigned its right to recover conditional payments pursuant to state and federal law as assigned

from Hygea Health Holdings, Inc. This second assignment agreement was executed by individuals

of majority, of sound mind, and with legal authority to bind the respective parties and was entered

into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Health Care Claims Cost Recovery Agreement** dated **September 14, 2015,** by and among **Hygea Health Holdings Inc.,** a Florida corporation (the "Client"), and **MSP Recovery, LLC,** a Florida limited liability company (the "Agreement"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

14

Consideration was given between each party in executing these assignment agreements.

19.     On February 18, 2016, **Medical IPA of the Palm Beaches, Inc.** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby assigns, transfers, conveys, sets over and delivers to MSP Claims, or its assigns, to the extent it is legally permitted any and all of Client's right, title, ownership and interest in and to all rights and entitlements, that Client has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 16-02-436, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Medical IPA of the Palm Beaches, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Claim(s) Cost Recovery Agreement and Assignment of Claims and Causes of Action** dated **February 18, 2016**, by and among **Medical IPA of the Palm Beaches, Inc.**, a Florida corporation **(the "Client")**, and **MSP Recovery, LLC**, a Florida limited liability company **(the "Agreement")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

20.     On February 28, 2017, **Arturo Corces, MD PA., dba Miami Institute for Joint Reconstruction**, entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

16

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 17-02-565, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Arturo Corces, MD PA., dba Miami Institute for Joint Reconstruction. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated **February 28, 2017**, by and among **Arturo Corces MD, P.A., dba Miami Institute for Joint Reconstruction**, a Florida professional association, and **MSP Recovery, LLC**, a Florida limited liability company (the **"Agreement"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

21.    On November 8, 2016, **OrthoNow Doral, LLC** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether

based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the **"Assigned Claims"**. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all documents relating to the Assigned Claims (the **"Assigned Documents"**). The Documents include, but are not limited to, those documents listed on Schedule A to the attached.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 16-11-524, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from OrthoNow, LLC and/or OrthoNow Doral, LLC. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated **November 8, 2016,** by and among **Orthonow Doral,** also known as, **OrthoNow, LLC,** a Florida limited liability company **(the "Client"),** and **MSP Recovery, LLC,** a Florida limited liability company **(the "Agreement");** irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

22.     On December 23, 2015, **Palm Beach Primary Care Associates, Inc.** entered into an assignment agreement with MSP Recovery 16-1, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery 16-1, LLC entered into an assignment agreement with Series 16-01-409, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Palm Beach Primary Care Associates, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Claim(s) Cost Recovery Agreement and Assignment of Claims and Causes of Action** dated **February 18, 2016**, by and among **Medical IPA of the Palm Beaches, Inc.**, a Florida corporation (the **"Client"**), and **MSP Recovery, LLC**, a Florida limited liability company (the **"Agreement"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

23.     On October 29, 2015, **PAUG/PHPG/PAG**, also known as **Physician Access Urgent Care Group, LLC**, entered into an assignment agreement with MSP Recovery 15-580, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery 15-580, LLC entered into an assignment agreement with Series 15-10-362, a designated series of MSP Recovery Claims, Series LLC, whereby it

irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from PAUG/PHPG/PAG and/or Physician Access Urgent Care Group, LLC. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Health Care Claim(s) Cost Recovery Agreement** dated October 29, 2015, by and among **PAUC/PHPG/PAG**, also known as, **Physician Access Urgent Care Group, LLC.,** a Florida limited liability company **(the "Client")**, and **MSP Recovery 15-580, LLC,** a Delaware limited liability company **(the "Agreement")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

24.     On February 18, 2016, **Preferred Primary Care, LLC** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and

21

all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "**Assigned Claims**". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 16-02-435, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Preferred Primary Care, LLC. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated July 19, 2017, by and among **Premier Care Partners, LLC**, a Florida limited liability company (the "Client"), and **MSP Recovery, LLC**, a Florida limited liability company (the "Agreement"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

25.    On August 13, 2015, **Presgar Imaging of CMI North, LLC** entered into an assignment agreement with MSP Recovery 200, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective

parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement,

the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership
> and interest in and to all rights and entitlements, and all information and data used
> to pursue and/or recover monies for Client that Client has, may have had, or has
> asserted against any party (the "Assigned Claims"). This includes, but is not limited
> to, primary payors and/or third parties that may be liable to Client arising from or
> relating to said claims.

On June 12, 2017, MSP Recovery 200, LLC entered into an assignment agreement with

Series 15-08-21, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably

assigned its right to recover conditional payments pursuant to state and federal law as assigned

from Presgar Imaging of CMI North, LLC. This second assignment contract was executed by

individuals of majority, of sound mind, and with legal authority to bind the respective parties and

was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration
of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is
hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee
and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the
"Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and
products thereof) as such terms are defined in the **Health Care Claims Costs Recovery Agreement**
dated **August 13, 2015**, by and among **Presgar Imaging of CMI North, LLC.**, a Florida limited
liability company (the "Client"), and **MSP Recovery 200, LLC**, a Delaware limited liability company
(the "Agreement"); irrespective of when the claims were vested in Client, inclusive of any and all
claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds,
in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but
not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has
asserted against any party pursuant to the Agreement, including claims under consumer protection
statutes and laws, any and all rights and claims against primary payers and/or third parties that may be
liable to Client arising from or relating to the Claims and all information relating thereto. The transfer,
grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in
and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns.
The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC
obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

26.     On September 21, 2015, **Quality Medical Association of West Delray, Inc.** entered into an assignment agreement with MSP Recovery 16-2, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery 16-2, LLC entered into an assignment agreement with Series 16-01-410, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Quality Medical Association of West Delray, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Healthcare Claim(s) Cost Recovery Agreement** dated **September 21, 2015**, by and among **Quality Medical Assoc. of West Delray**, also known as, **Quality Medical Association of West Delray, Inc.,** a Florida corporation **(the "Client")**, and **MSP Recovery 16-2, LLC**, a Delaware limited liability company **(the "Agreement")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

27.     On November 23, 2015, **Quality Physicians Management, Inc.** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery LLC entered into an assignment agreement with Series 15-08-23, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned

from Quality Physicians Management, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Actos Recovery Agreement** dated **August 27, 2015** and **Recovery Agreement** dated **November 23, 2015**, each by and among **Quality Physician Management, Inc.**, a Florida corporation **(the "Client")**, and **MSP Recovery, LLC**, a Florida limited liability company **(together the "Agreements")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

28.     On February 18, 2016, **Risk Watchers, Inc.** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby assigns, transfers, conveys, sets over and delivers to MSP Claims, or its assigns, to the extent it is legally permitted any and all of Client's right, title, ownership and interest in and to all rights and entitlements, that Client has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery LLC entered into an assignment agreement with Series 15-09-31, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Risk Watchers, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Claim(s) Cost Recovery Agreement and Assignment of Claims and Causes of Action** dated **February 18, 2016,** by and among **Risk Watchers, Inc.,** a Florida corporation, also known as, **Healthy Partners / Risk Watchers, Inc (the "Client"),** and **MSP Recovery, LLC,** a Florida limited liability company **(the "Agreement");** irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

29.     On September 21, 2015, **Suncoast Medical Network 2, Inc.** entered into an assignments agreement with MSP Recovery, 220, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery 220, LLC entered into an assignment agreement with Series 15-08-10, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Suncoast Medical Network 2, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Healthcare Claim(s) Cost Recovery Agreement** dated **September 21, 2015,** by and among **SunCoast Medical Network 2, Inc.,** a Florida corporation **(the "Client"),** and **MSP Recovery 220, LLC,** a Delaware limited liability company **(the "Agreement")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

30.     On November 9, 2015, **Suncoast Provider Network, Inc.** entered into an assignment agreement with MSP Recovery 15-608, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was

executed by individuals of majority, of sound mind, and with legal authority to bind the respective

parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement,

the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership
> and interest in and to all rights and entitlements, and all information and data used
> to pursue and/or recover monies for Client that Client has, may have had, or has
> asserted against any party (the "Assigned Claims"). This includes, but is not limited
> to, primary payors and/or third parties that may be liable to Client arising from or
> relating to the Assigned Claims.

On June 12, 2017, MSP Recovery 15-608, LLC entered into an assignment agreement with

Series 15-11-387, a designated series of MSP Recovery Claims, Series LLC, whereby it

irrevocably assigned its right to recover conditional payments pursuant to state and federal law as

assigned from Suncoast Provider Network, Inc. This second assignment agreement was executed

by individuals of majority, of sound mind, and with legal authority to bind the respective parties

and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration
of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is
hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee
and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the
"Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and
products thereof) as such terms are defined in the **Health Care Claim(s) Cost Recovery Agreement**
dated **November 9, 2015**, by and among **Suncoast Provider Network, Inc.**, a Florida corporation **(the
"Client")**, and **MSP Recovery 15-608, LLC**, a Delaware limited liability company **(the
"Agreement")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s),
causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect
thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited
to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted
against any party pursuant to the Agreement, including claims under consumer protection statutes and
laws, any and all rights and claims against primary payers and/or third parties that may be liable to
Client arising from or relating to the Claims and all information relating thereto. The transfer, grant,
right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to
the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent
of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an
assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

31.    On November 3, 2015, **Transatlantic Healthcare, Inc.** entered into an assignment agreement with MSP Recovery 15-131, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery 15-131, LLC entered into an assignment agreement with Series 15-11-385, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Transatlantic Healthcare, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Health Care Claim(s) Cost Recovery Agreement** dated November 3, **2015**, by and among **Transatlantic Healthcare**, also known as **Transatlantic Healthcare Inc.**, a Florida corporation (the "**Client**"), and **MSP Recovery 15-131, LLC**, a Florida limited liability company (**the "Agreement"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

32.     On November 3, 2015, **Trinity Physicians, LLC** entered into an assignment agreement with MSP Recovery 15-592, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery 15-592, LLC entered into an assignment agreement with Series 15-11-371, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as

assigned from Trinity Physicians, LLC. This second assignment agreement was executed by

individuals of majority, of sound mind, and with legal authority to bind the respective parties and

was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Actos Recovery Agreement** dated **October 29, 2015** and the **Health Care Claim(s) Cost Recovery Agreement** dated **November 3, 2015**, each by and among **Trinity Physicians, LLC.,** a Florida limited liability company (the "**Client**"), and **MSP Recovery 15-592, LLC,** a Delaware limited liability company, and **MSP Recovery, LLC.,** a Florida limited liability company (together, the "**Agreement**"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof; whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreements, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreements shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

33.     On November 23, 2015, **University Health Care MSO, Inc.** entered into an

assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to

recover conditional payments pursuant to state and federal law. The assignment agreement was

executed by individuals of majority, of sound mind, and with legal authority to bind the respective

parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement,

the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party ("Assigned Claims").    This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 15-08-25, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from University Health Care MSO, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Actos Recovery Agreement** dated **August 27, 2015**, and **Recovery Agreement** dated **November 23, 2015**, each by and among **University Health Care MSO, Inc.,** a Florida corporation (the **"Client"**), and **MSP Recovery, LLC,** a Florida limited liability company (together, the **"Agreements"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

34.    On April 7, 2016, **Verimed IPA, LLC** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered

33

into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to

maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, and any of its successors and assigns, any and all of Client's right, title,
> ownership and interest in and to all Claims existing on the date hereof, whether
> based in contract, tort, statutory right, and any and all rights (including, but not
> limited to, subrogation) to pursue and/or recover monies for Client that Client had,
> may have had, or has asserted against any party in connection with the Claims and
> all rights and claims against primary payers and/or third parties that may be liable
> to Client arising from or relating to the Claims, including claims under consumer
> protection statutes and laws, and all information relating thereto, all of which shall
> constitute the "Assigned Claims". The transfer, grant, right, or assignment of any
> and all of Client's right, title, ownership, interest and entitlements in and to the
> Assigned Claims shall remain the confidential and exclusive property of MSP
> Recovery or its assigns. This assignment is irrevocable and absolute. This
> assignment shall survive the termination or expiration of this Agreement,
> notwithstanding anything herein to the contrary.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series

15-09-108, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably

assigned its right to recover conditional payments pursuant to state and federal law as assigned

from Verimed IPA, LLC. This second assignment agreement was executed by individuals of

majority, of sound mind, and with legal authority to bind the respective parties and was entered

into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated **April 7, 2016,** by and among **Verimed IPA, LLC.,** a Florida limited liability company **(the "Client"),** and **MSP Recovery, LLC,** a Florida limited liability company **(the "Agreement");** irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

35.     On December 16, 2014, **Interamerican Medical Center Group, LLC** (IMC) entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> By way of this Agreement, [IMC] appoints, directs, or otherwise, irrevocably assigns all of [IMC's] rights as it pertains to the rights pursuant to any plan, State or Federal statute(s) whatsoever directly and/or indirectly for any of its members and/or plan participants, and/or its rights . . . .

On February 20, 2015, MSP Recovery, LLC entered into an assignment agreement with MSPA Claims 1, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Interamerican Medical Center Group, LLC (IMC). This second assignment agreement was executed by individuals of majority, of sound

mind, and with legal authority to bind the respective parties and was entered into under Florida law:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee or its assigns any and all of Assignor's right, title, ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has asserted against third parties from or relating to the Claims.

Consideration was given between each party in executing these assignment agreements. All conditions precedent to the IMC assignment have been satisfied or waived, including any requirement for the approval of any assignments, to the extent such approval was required for the assignment from MSP Recovery to MSPA, which was merely ministerial in nature. In fact, IMC accepted, acknowledged, approved, and consented to any subsequent assignment from MSP Recovery to any then-existing or future MSP Company, which includes MSPA.

36.    On December 3, 2014, **MCCI Group Holdings, LLC** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigning its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> As it pertains to these past claims as delineated herein, Client appoints, directs, and, otherwise, assigns all of Client's rights as it pertains to the rights pursuant to any plan, State or Federal statute(s) whatsoever directly and/or indirectly for any of its members and/or plan participants, and/or its rights pursuant to any agreement with the understanding that the irrevocable assignment requires that MSP Recovery compensate Client as per the terms of this Agreement even if Client cancels the Agreement pursuant to the terms herein. It is the intent of the parties that MSP Recovery's rights are vested and that there shall exist the right to impose a lien on any and all cases identified by MSP Recovery pursuant to this Agreement.

On February 20, 2015, MSP Recovery, LLC entered into an assignment agreement with MSPA Claims 1, LLC, whereby it irrevocably assigned its right to recover conditional payments

pursuant to state and federal law as assigned from MCCI Group Holdings, LLC. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties was entered into under Florida law:

1.     **Irrevocable and Absolute Assignment of Claims.** Assignor hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee or its assigns any and all of Assignor's right, title, ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has asserted against third parties arising from or relating to the Claims.

Consideration was given between each party in executing these assignment agreements.

37.     On April 28, 2016, **Health First Health Plans, Inc.,** a Medicare Advantage Organization, through its administrator **Health First Administrative Plans, Inc.,** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential. The Recovery Agreement expressly provides:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims."
>
> The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest, and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

On June 12, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 16-05-456, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Health First Administrative Plans, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

> …each undersigned Assignor… irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement …

Consideration was given between each party in executing these assignment agreements.

On June 1, 2018, Health First Administrative Plans, Inc., Health First Health Plans, Inc., and MSP Recovery, LLC entered into an Addendum to the Recovery Agreement and Assignment between Health First Administrative Plans, Inc. and MSP Recovery, LLC as well as an Assignment dated June 1, 2018 which confirmed that Health First Health Plans, Inc. was an assignor and intended party to the original agreement.

38.    On August 17, 2017, **Medical Consultants Management, LLC** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not

limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

On September 8, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 17-08-647, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Medical Consultants Management, LLC. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement dated August 17, 2017**, by and among **Medical Consultants Management, LLC**, a Florida limited liability company **(the "Client")**, and **MSP Recovery, LLC**, a Florida limited liability company **(the "Agreement")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

39.     On December 19, 2017, **Primus Health Network, LLC** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed

by individuals of majority, of sound mind, and with legal authority to bind the respective parties

and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the

parties agreed to maintain the terms of the assignment agreement confidential:

> Client irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, and any of its successors and assigns, any and all of Client's right, title,
> ownership and interest in and to (i) all Claims existing on the date hereof, whether
> based in contract, tort or statutory right, (ii) any and all legal or equitable rights
> (including, but not limited to, subrogation) to pursue and/or recover monies related
> to the Claims that Client had, may have had, or has asserted against any party in
> connection with the Claims and (iii) all rights and claims, legal or equitable, against
> primary payers, Responsible Parties and/or third parties that may be liable to Client
> arising from or relating to the Claims, including claims under consumer protection
> statutes and laws (all of the items set forth in (i)-(iii), the "*Assigned Claims*"). The
> assignment of the Assigned Claims provided in this Section 1.1. is irrevocable and
> absolute. By way of this assignment, Client is not assigning its obligations to
> provide care and treatment to any patient, whether a Medicare beneficiary or not.

On March 27, 2018, MSP Recovery, LLC entered into an assignment agreement with

Series 18-01-811, a designated series of MSP Recovery Claims, Series LLC, whereby it

irrevocably assigned its right to recover conditional payments pursuant to state and federal law as

assigned from Primus Health Network, LLC. This second assignment agreement was executed by

individuals of majority, of sound mind, and with legal authority to bind the respective parties and

was entered into under Florida law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Assignment and Recovery Agreement** dated **December 19, 2017**, by and among **Primus Health Network, LLC.**, a Florida limited liability company, (the "**Client**"), and **MSP Recovery, LLC**, a Florida limited liability company (the "**Agreement**"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

40.    On April 30, 2018, **Community Health Providers, Inc.** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

41

On May 30, 2018, MSP Recovery, LLC entered into an assignment agreement with Series 18-03-848, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Community Health Providers, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated **April 30, 2018,** by and among **Community Health Providers, Inc.,** a Florida corporation, and **MSP Recovery, LLC.,** a Florida limited liability company (the **"Agreement"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

41.    On February 19, 2018, **Espaillat Vision Network, PLLC** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether

based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

On March 30, 2018, MSP Recovery, LLC entered into an assignment agreement with Series 17-03-620, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Espaillat Vision Network, PLLC. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated **February 19, 2018**, by and among **Espaillat Vision Network, PLLC.**, a Florida professional limited liability company, and **MSP Recovery, LLC.**, a Florida limited liability company (the **"Agreement"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

42.     On May 3, 2018, **Christian Gonzalez M.D., LLC.**, a Florida limited liability company also doing business as **Spine and Wellness Centers of America** entered into an

assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

On May 30, 2018, MSP Recovery, LLC entered into an assignment agreement with Series 18-04-859, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Christian Gonzalez M.D., LLC. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated May 3, 2018, by and among **Christian Gonzalez M.D., LLC.,** a Florida limited liability company, doing business as Spine and Wellness Centers of America and **MSP Recovery, LLC.,** a Florida limited liability company (the **"Agreement"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

43.     On December 19, 2017, **Accountable Care Options, LLC** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

> Client irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort or statutory right, (ii) any and all legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that Client had, may have had, or has asserted against any party in connection with the Claims and (iii) all rights and claims, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the items set forth in (i)-(iii), the *"Assigned Claims"*). The assignment of the Assigned Claims provided in this Section 1.1. is irrevocable and absolute. By way of this assignment, Client is not assigning its obligations to provide care and treatment to any patient, whether a Medicare beneficiary or not.

On March 27, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 18-01-812, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Accountable Care Options, LLC. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the Assignment and Recovery Agreement dated **December 19, 2017**, by and among **Accountable Care Options, LLC.**, a Florida limited liability company, and **MSP Recovery, LLC**, a Florida limited liability company (the **"Agreement"**); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

44. On April 16, 2018, **ACO Health Partners, LLC** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

1.1.1. Client irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title,

ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort or statutory right, (ii) any and all legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that Client had, may have had, or has asserted against any party in connection with the Claims and (iii) all rights and claims, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the items set forth in (i)-(iii), the *"Assigned Claims"*). The assignment of the Assigned Claims provided in this Section 1.1 is irrevocable and absolute. By way of this assignment, Client is not assigning its obligations to provide care and treatment to any patient, whether a Medicare Beneficiary or not.

On April 20, 2018, MSP Recovery, LLC entered into an assignment agreement with Series 17-12-674, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from ACO Health Partners, LLC. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Assignment and Recovery Agreement** dated **April 16, 2018**, by and among ACO Health **Partners, LLC.**, a Delaware limited liability company, and MSP Recovery, LLC, a Florida limited liability company (the "Agreement"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

45.     On October 6, 2017, **Family Physicians of Winter Park, P.A.**, a Florida professional association, doing business as **Family Physicians Group** entered into an assignment

agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to those Claims transferred to MSP Recovery for Claims' analysis and recovery pursuit on the date of transferring said claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the **"Assigned Claims"**. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is revocable upon mutual consent of Client and MSP Recovery as it pertains to any prospective claims. The claims assigned can only be re-assigned by agreement with both parties. .

On October 10, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 17-05-634, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Family Physicians Group. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement dated October 6, 2017**, by and among **Family Physicians of Winter Park. P.A.**, a Florida professional association doing business a **Family Physicians Group**, and **MSP Recovery, LLC**, a Florida limited liability company **(the "Agreement")**; irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

46.     On July 19, 2017, **Premier Care Partners, LLC.** entered into an assignment agreement with MSP Recovery, LLC, whereby it irrevocably assigned its right to recover conditional payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

On July 20, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 17-07-642, a designated series of MSP Recovery Claims, Series LLC, irrevocably assigned its right to recover conditional payments pursuant to state and federal law as assigned from Premier

Care Partners, LLC, Inc. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated **July 19, 2017**, by and among **Premier Care Partners, LLC**, a Florida limited liability company (the "Client"), and **MSP Recovery, LLC**, a Florida limited liability company (the "Agreement"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Consideration was given between each party in executing these assignment agreements.

47.     Defendant Alere, Inc. is a corporation with a principal place of business in Waltham, Massachusetts. Defendant Alere, Inc. is headquartered in Waltham, Massachusetts, and is the parent corporation of Defendants Alere San Diego, Inc., and Alere Home Monitoring, Inc.

48.     Defendant Alere San Diego, Inc. is a foreign corporation with a principal place of business in San Diego, California.

49.     Defendant Alere Home Monitoring, Inc. is a foreign corporation with a principal place of business in San Diego, California.

50.     Venue is proper because Defendants have an agent or other representative in Miami-Dade County, Florida, and the cause of action accrued in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

51.    Alere manufactures and sold a home testing system used to test how quickly blood clots in patients taking Warfarin.

52.    Warfarin is an anticoagulant prescribed to prevent blood clots from forming or growing larger. Blood clots can cause a heart attack, stroke, deep vein thrombosis, pulmonary embolism, or other life-threatening medical conditions by preventing blood flow to bodily organs.

53.    Warfarin decreases the body's ability to form blood clots, so it stops harmful clots from forming and prevents clots from getting larger. But Warfarin's dosage must be carefully monitored and precisely calibrated on a regular basis. A balance must constantly be maintained – if the dosage is too low, blood clots will not be prevented, but if it is too high, there is an increased risk of bleeding.

54.    Doctors regulate Warfarin dosage by keeping it within a therapeutic target range. That range is determined using the international normalized ratio ("INR"), a measure of how much time it takes a patient's blood to clot.

55.    Unlike most medications that are administered as a fixed dose, Warfarin dosing is adjusted according to the patient's INR blood test results; therefore, the dose often changes over time. This is why those who take Warfarin must have their blood tested so frequently. And it is why doctors so carefully monitor the dosage with regular blood testing, and adjust it to remain within the therapeutic target range.

56.    Alere manufactures and sold the INRatio® Monitors, the INRatio®2 Monitors, and the INRatio® Test Strips (collectively the "INRatio System"), which purports to measure a patient's INR. Doctors use the INR results the INRatio System produces to adjust the Warfarin dosage to achieve maximum therapeutic efficiency and to prevent both spontaneous bleeding (too

51

high a dosage), and dangerous clot formation (too low a dosage) among other dangerous and potentially lethal side effects. Patients use the system to report their INR to their doctors.

57.     Alere sold the INRatio System directly to consumers, for use as a self- administered INR testing device prescribed by their doctor, and to medical professionals for in-office use.

58.     The INRatio System often provided significantly inaccurate results, exposing its users to the risks caused by inaccurate warfarin dosing.

59.     Ultimately, the FDA intervened, and in December 2014 Alere issued a "voluntary" Class 1 Recall of the INRatio® Monitors, the INRatio®2 Monitors, and the INRatio® Test Strips. Class 1 Recalls are rare events, issued only where there is a significant and immediate danger of death or other serious injury from using the product being recalled.

60.     Despite the stakes involved, Alere failed to take necessary or reasonable measures to reach all the patients relying on the inaccurate INRatio System for critical test results. Neither Plaintiffs' Assignors' Enrollees received any recall notices or alerts directly from Alere. They only learned of the danger of using the INRatio Systems from the internet.

61.     In July 2016, Alere announced a withdrawal from the market of the InRatio® and InRatio®2 PT/INR monitoring systems. In announcing its market withdrawal, Alere stated that the software changes it developed to address the issue of inaccurate results, were found by the Food and Drug Administration (FDA) to be ineffective, based on Alere's own studies.

62.     Alere has refused to refund the cost of its INRatio System to Plaintiffs' Assignors' Enrollees, or to any purchaser.

### ALERE'S MISCONDUCT IN MARKETING ITS INHERENTLY DANGEROUS INRATIO SYSTEM

63.     Anticoagulants like Warfarin are typically prescribed to patients who have undergone replacement or mechanical heart valve surgery; have irregular heartbeats such as atrial

52

fibrillation (arrhythmia of the heart); have had heart attacks; are trying to prevent deep vein thrombosis (blood clots deep within the body) and pulmonary embolisms (blood clots in the lungs); or are suffering from other conditions that predispose them to blood clots.

64.     Prescribing Warfarin requires that the doctor constantly measure and correspondingly adjust the patient's dosage to achieve a therapeutic effect – staying below the dangerous dose that could lead to uncontrolled bleeding while providing enough of the drug to prevent equally dangerous clots.

65.     In the last decade, home testing devices that accurately measure the INR have reduced the cost of and logistical difficulties with testing for the ratio, and increased the well-being of patients using Warfarin.

66.     Alere's INRatio® Monitors and INRatio®2 Monitors are one form of such home testing devices.



67. But in practice the INRatio System did not perform as promised.

68. In 2005, the FDA conducted an inspection of the Defendants' manufacturing plant. Based on its inspection, the FDA issued a warning letter citing Defendants, then operating under the name Hemosense Corporation, for failing to report known instances in which its device produced clinically significant inaccurate results, some of which may have caused or contributed to death or serious injury, or could do so in the future.

69. In its warning letter, the FDA stressed the importance of accurate results, noting: "If the INR is too low, a patient will be prone to form blood clots or strokes. If the INR is too high, a patient will be prone to excessive bleeding. Therefore, both high and low test results have the potential to cause or contribute to a death or serious injury, because they may result in erroneous dosing and thus improper control of coagulation."

## ALERE'S MISCONDUCT REGARDING RECALLS

### a. Recall of Test Strips

70. Yet, even after the FDA warning, Alere continued to receive complaints from patients of significantly inaccurate test results. As a result, on April 16, 2014, Alere, Inc. voluntarily recalled certain INRatio® Test Strips. See FDA.gov, Medical Device Recalls, www.fda.gov/MedicalDevices/Safety/ListofRecalls/ucm397509.htm (last visited May 30, 2016).

71. Alere represented that, on April 17, 2014, it sent an urgent medical device recall letter to certain users of INRatio® Test Strips by fax, email or direct mail.

72. However, this limited recall did not remedy the serious and continuing problems of inaccurate INR results.

**b. Recall of the Entire INRatio System**

73.     According to the FDA, between 2013 and 2014 Alere received over 18,000 complaints about the INRatio System, including reports of serious injuries and deaths caused by bleeding.

74.     Ultimately, the FDA effectively forced Alere's hand, and on December 5, 2014 Alere initiated a "voluntary" Class 1 Recall of all INRatio® Monitors, the INRatio®2 Monitors, and the INRatio® Test Strips. The FDA recall notice itself was both damning and frightening, stating that the recall was necessary because "use of the affected devices may delay treatment and cause severe or life-threatening injuries, including death."

75.     In connection with the recall, on December 5, 2014, Alere represented that it issued an urgent medical device "correction" letter to INRatio® Monitor, INRatio®2 Monitor, and INRatio® Test Strips customers.

76.     On December 8, 2014, Alere also issued a press release from its Waltham Massachusetts headquarters. "Alere Inc. (NYSE: ALR) has initiated a voluntary correction to inform U.S. users of the [INRatio Systems] ... that a significant discrepancy in INR results may lead to a delay in an urgent medical decision to reverse a supratherapeutic INR level ...."

77.     This recall involved Alere's INRatio® Monitor, INRatio®2 Monitor, and INRatio® Test Strips manufactured and distributed between April 1, 2008 and December 4, 2014.

78.     The December 2014 recall notice informed customers that they should not use the INRatio System if they had a wide range of certain common conditions among this patient population, including:

        a.     anemia (low hemoglobin or low red blood cell count);

        b.     any conditions associated with elevated fibrinogen levels;

c.    acute inflammatory conditions (for example viral or bacterial infections such as pneumonia or flu);

d.    chronic inflammatory conditions (for example rheumatoid arthritis, Crohn's disease, ulcerative colitis, infectious liver diseases such as hepatitis, or inflammatory kidney diseases such as diabetic nephropathy and glomerulonephritis);

e.    severe infection (for example sepsis);

f.    advanced stage cancer or end stage renal disease requiring hemodialysis; or

g.    any bleeding or unusual bruising.

79.    Both recalls of the Alere INRatio System and Test Strips are designated as "Class 1" recalls, defined by the FDA as "a situation in which there is a reasonable probability that the use of or exposure to a violative product will cause serious adverse health consequences or death."

80.    Both recall notices advised INRatio System customers of the device's propensity to provide an inaccurate INR result.

81.    Neither recall notice informed System users that, as the FDA expressly warned on its website: "Use of the affected devices may delay treatment and cause severe or life-threatening injuries, including death." (emphasis added). The press release issued from corporate headquarters also omitted any mention of these extreme dangers.

82.    Alere attempted unsuccessfully to correct the inaccuracy issue through changes to the system software at the end of 2015. However, the FDA notified Alere that it concluded that Alere's studies did not adequately demonstrate that the software modification was effective. And so the FDA instructed Alere to voluntarily remove the device from the market.

83.     Alere has refused to issue refunds of the cost of the INRatio System to those who purchased them, including Plaintiffs' Assignors and continues to do so.

### CAUSE OF ACTION

84.     A pure bill of discovery requires the following:

    a.    The matters concerning which the discovery asked for is sought;

    b.    The interests of the several parties in the subject of the inquiry;

    c.    The complainant's right to have the relief prayed;

    d.    The complainant's title and interest, and what the relationship of same is to the discovery claimed; and

    e.    Discovery so attempted is material to litigation brought on the common law side of the court so as to entitle the complainant to a disclosure of what is necessary to maintain its own claim in that litigation. *See Publix Supermarkets, Inc. v. Frazier*, 696 So. 2d 1369, 1371 (Fla. 4th DCA 1997).

85.     A pure bill of discovery is available as an aid in bringing or defending an action about to be commenced regardless if the party "would be entitled to the information . . . through routine discovery," as this "does not automatically preclude relief by way of . . . [a] true bill of discovery."*Lewis v. Weaver*, 969 So. 2d 586, 587 (Fla. 4th DCA 2007) ("a true bill of discovery . . . allow[s] the injured party to ascertain whether a lawsuit may properly be asserted and under what theory or theories[;] [however] [t]here must of course be some basis for targeting a particular defendant." .

86.     Plaintiffs seek to obtain information from Defendants regarding any and all registered users of the Defendants' Home Testing System including but not limited to, the following information for each Home Testing System recipient: : (1) Full Name; (2) Social Security Number ("SSN"), Health Insurance Claim Number ("HICN"), or Medicare Beneficiary Identifier ("MBI"); (3) Date of Birth; and (4) Address.

87. Plaintiffs seek a pure bill of discovery to confirm the identity of the proper defendant and the appropriate legal theory of relief.

88. Plaintiffs lack an adequate legal remedy and thus, a pure bill of discovery is the appropriate remedy.

**WHEREFORE**, Plaintiffs respectfully request that:

1. Defendants be directed by this Court to produce to Plaintiffs any information including, but not limited to, the following for each Home Testing System recipient: (1) Full Name; (2) SSN, HICN, or MBI; (3) Date of Birth; and (4) Address.

2. Defendants bear the costs for the filing of this action; and

3. Any such further relief as this Honorable Court may deem just and proper.

DATED: September 10, 2018.

**MSP RECOVERY LAW FIRM**
5000 SW 75th Avenue, Suite 300
Miami, Florida 33155
Telephone: (305) 614-2222

By: */s/ John H. Ruiz*
John H. Ruiz, Esquire, Fla. Bar No. 928150